UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 24-cr-187-1 (ECT/DJF) |
| Plaintiff, | |
| v. | **ORDER ACCEPTING REPORT AND RECOMMENDATION** |
| Abdirahman Abdi Abdullahi, | |
| Defendant. | |

---

Magistrate Judge Dulce J. Foster issued a Report and Recommendation [ECF No. 52] ("R&R") regarding two suppression motions filed by Defendant Abdirahman Abdi Abdullahi [ECF Nos. 26, 27]. Judge Foster recommends denying Abdullahi's motion to suppress evidence from arrest and search [ECF No. 26] and his motion to suppress statements [ECF No. 27]. *See generally* R&R. Because Abdullahi has objected, the R&R will be reviewed *de novo*. ECF No. 53; 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3). The R&R will be accepted because Judge Foster's conclusions are correct.

Abdullahi is charged with one count of arson causing injury in violation of 18 U.S.C. § 844(i). ECF No. 13. The charges stem from a house fire in Eden Prairie, Minnesota, on the morning of May 31, 2024. ECF No. 37 at 17. The R&R details the key events leading up to Abdullahi being charged with arson, including salient facts regarding the fire and investigation, law enforcement officers' initial interview of Abdullahi, and Abdullahi's subsequent arrest. R&R at 2–5. This Order presumes familiarity with the R&R.

I

Abdullahi objects to Magistrate Judge Foster's conclusion that officers had probable cause to arrest him without a warrant. ECF No. 53 at 6–13. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Guevara*, 731 F.3d 824, 832 (8th Cir. 2013). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)). Put another way, "[p]robable cause for a warrantless arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *United States v. Tovar-Valdivia*, 193 F.3d 1025, 1028 (8th Cir. 1999) (cleaned up). Once police have probable cause to believe a suspect has committed a felony, they can arrest the suspect without a warrant in a public place. *United States v. Watson*, 423 U.S. 411, 421–24 (1976).

Judge Foster concluded that probable cause supported Abdullahi's warrantless arrest based on evidence admitted at the suppression hearing. This evidence included: (1) police testimony regarding threats Abdullahi allegedly made to A.M., the mother of his child who lived in the house where the fire occurred; (2) police testimony regarding surveillance video of a person with a gas can and a red Jeep near the scene of the fire, tied

to a red jeep seen in Abdullahi's vicinity; and (3) inaccurate statements that Abdullahi made to police after the fire occurred. R&R at 7–10.

(1) Abdullahi objects to Judge Foster's reliance on threatening statements he was alleged to have made to A.M. prior to the fire. ECF No. 53 at 8–10. Abdullahi argues that the Government "failed to provide any information about the specific content of [A.M.'s] statements," and "[t]he detective who testified about the statements was only present for part of the conversations, could not recall what he heard directly and what he heard through another police officer, and could only provide one partial verbatim quote" regarding the alleged threats made to A.M. *Id*. at 8–9.

At the suppression hearing, Eden Prairie Police Detective Gennady Abramovich testified regarding A.M.'s interview after she was transported to the hospital following the fire. Detective Chaput primarily conducted the interview, but Detective Abramovich was present at times and summarized the interview. ECF No. 37 at 46–50. According to Detective Abramovich, "A.M. stated that she believed the father of her child was responsible for the fire." *Id*. at 49. Detective Abramovich testified that A.M. "[s]pecifically . . . mentioned [that] two days prior she had called police to report that [the father of her child] had come to her residence at 8511 Cardiff and threatened her" and "tried to get in the door." *Id*. Detective Abramovich summarized that A.M.'s child's father had "come to [A.M.'s] residence, threatened to kill her, and attempted to gain access to the residence." *Id*. at 50. Detective Abramovich testified that Detective Chaput documented that A.M. had identified Abdullahi as the father of her child. *Id*. at 52.

As Judge Foster properly determined, this information—identifying Abdullahi as the threat-maker with A.M.'s first-hand knowledge—was sufficiently specific for officers to reach a "practical, common-sense judgment" that the alleged threats to A.M. implicated Abdullahi in the fire. *See Illinois v. Gates*, 462 U.S. 213, 244 (1983). Moreover, Judge Foster correctly concluded that Detective Abramovich's testimony about information gathered and reported by Detective Chaput, and officers' reliance on this information in making a probable cause determination, was not improper. *See* ECF No. 37 at 49; *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) ("When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." (citations omitted)).

Abdullahi objects to Judge Foster's reliance on the CashApp-related message as a threat, arguing that the screen shot of the CashApp-related message was undated, "vague[,] and could have multiple meanings other than a threat," thus undermining its significance. ECF No. 53 at 9. Abdullahi contends that the Government "provided no evidence addressing any history between . . . Abdullahi and [A.M.] which could shed any light on the reasonable [sic] of any belief that [Abdullahi] would harm her." *Id*. These arguments are not persuasive. Detective Abramovich testified that "A.M. mentioned" that the CashApp-related message was sent "recent[ly], within a few days" before the fire. ECF No. 37 at 52. In light of A.M.'s first-hand account of Abdullahi's alleged in-person threats two days prior, the police very reasonably interpreted Abdullahi's CashApp message ("for when I see u I'm smoke u") as an additional threat to A.M. Gov't Ex. 1. That is the far

4

more reasonable understanding of the message. The evidence was sufficient to support a conclusion that Abdullahi had threatened A.M. shortly before the fire, and the officers properly relied on the threats to support their probable cause determination.

(2) Abdullahi objects to Judge Foster's reliance on the presence of a red Jeep on video surveillance retrieved from a business near the fire, coupled with Abdullahi's proximity to a red Jeep or vehicle, to support the probable cause determination. ECF No. 53 at 10–11. Eden Prairie Police Sergeant Lonnie Soppeland testified that the police relied on video surveillance obtained from a nearby business, and Detective Abramovich testified that the video "captured a red Jeep in the area minutes before the fire," and that the individual on that video "was seen with a gas can." ECF No. 37 at 18–19, 54. Judge Foster properly concluded that this "video supported an inference that the fire was no accident, and someone deliberately set it." R&R at 8. Detective Abramovich also testified about other information that the police gathered possibly connecting Abdullahi to a red vehicle before and after the fire, namely: (a) A.M.'s report that Abdullahi was driving a red vehicle when he came to her house and threatened her, ECF No. 37 at 54–55; (b) a red Jeep was seen near Abdullahi's residence, *id*. at 55; and (c) police observed Abdullahi interacting with an individual driving that same red Jeep outside of Abdullahi's place of employment just before his arrest, *id*. at 55–56. Abdullahi argues that the red Jeep sightings did not justify a probable cause finding because of the large number of red Jeeps possibly in Minnesota and because there is no evidence that Abdullahi owned, rented, or drove the red Jeep. ECF No. 53 at 10–11. A prudent person could conclude that the red Jeep-related evidence is reasonably trustworthy in connecting Abdullahi to the crime. A red Jeep was

5

in the vicinity just before the fire, and the evidence connected Abdullahi to that same type of vehicle at different locations on multiple occasions soon after the crime. Considered as part of the totality of circumstances, the red Jeep-related evidence supports the probable cause determination.

(3) Abdullahi objects to Judge Foster's reliance on inaccurate statements he made during his initial police interview to support a probable-cause determination. ECF No. 53 at 11–13. As shown in the body camera footage, when interviewed by Detective Brown outside his place of employment, Abdullahi denied having any relatives, current or former partners, or "baby mamas" living in the Eden Prairie area. Gov't Ex. 2 at 1:00–1:15, 1:52–2:16. Abdullahi also denied having any children. *Id*. at 2:04–2:15. Abdullahi does not deny his statements were inaccurate; rather, he argues that he was cooperating with the interview and volunteered other information to Detective Brown—namely, the fact that he was on probation for violating a restraining order—demonstrating that he was not trying to hide information. ECF No. 53 at 12. Abdullahi also argues that the information he volunteered would "easily enable police to determine that he had issues with his ex-partner who lived in Eden Prairie." *Id.* Further, Abdullahi points to Sergeant Soppeland's statement at the conclusion of the interview that it was "ending of recording, no evidentiary value" as evidence that the interview did not factor into the decision to arrest Abdullahi. ECF No. 37 at 7:08–7:10; ECF No. 53 at 12. Abdullahi's arguments are not convincing. As Judge Foster correctly determined, Abdullahi's transparency about one topic does not mean he told the truth about everything. R&R at 10. Likewise, that Abdullahi shared information that may have exposed the falsity of his statements does not indicate his

6

honesty. *Id*. Finally, whether the officers assigned "no evidentiary value" to the bodycam footage at the time of recording is of no consequence to the later probable cause determination. As Judge Foster concluded, the Fourth Amendment requires the court to conduct an objective analysis of the evidence known to police before Abdullahi's arrest, regardless of the officers' subjective intentions. *See id.* at 9 n.3; *Scott v. United States*, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). If the evidentiary value of Abdullahi's statements was not immediately clear to Sergeant Soppeland, when viewed objectively, the statements supported a probable-cause determination.

Considering the totality of the circumstances, Judge Foster correctly determined that probable cause supported Abdullahi's arrest. As Abdullahi's Fourth Amendment rights were not violated, the evidence obtained from Abdullahi is not the fruit of an illegal seizure and will not be suppressed. *See Brown v. Illinois*, 422 U.S. 590, 602–03 (1975).

II

Abdullahi makes non-specific objections to Judge Foster's recommendation that Abdullahi's pre-arrest statements should not be suppressed under *Miranda*. ECF No. 53 at 6 n.2. Abdullahi argues that he was in custody during the interview and had not been given *Miranda* warnings, so his statements from the interview must be suppressed. After considering each custody factor enumerated in *Griffin*, Judge Foster determined that Abdullahi's statements during the initial interview need not be suppressed because

Abdullahi was not in custody at the time of the interview, his movement was not restrained in any way, he voluntarily acquiesced to the questioning, and the questioning did not occur in a police-dominated atmosphere. R&R at 10–14 (citing *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

*Miranda* governs the admissibility of statements made by a criminal defendant who is interrogated while in police custody. *Dickerson v. United States*, 530 U.S. 428, 432 (2000). There is no dispute that Abdullahi was not Mirandized when he was interviewed outside the vape shop on May 31, 2024. Thus, whether *Miranda* was triggered turns on whether Abdullahi was in custody.

"An individual is in custody when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). Whether Abdullahi was in custody depends on whether "a reasonable person in his position would have felt free to end the interrogation and leave," considering the totality of the circumstances he faced at the time of questioning. *Id.* In *United States v. Griffin*, the Eighth Circuit enumerated factors to help courts make custody determinations for *Miranda* purposes. The *Griffin* factors are

> (1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Elzahabi*, 557 F.3d at 883 (citing *Griffin*, 922 F.2d at 1349). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of

8

questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States v. Axsom*, 289 F.3d 496, 500–01 (8th Cir. 2002). The Eighth Circuit has cautioned that "custody 'cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly.'" *Elzahabi*, 557 F.3d at 883 (quoting *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004)).

(1) Abdullahi was not informed that he was free to leave, that answering Detective Brown's questions was voluntary, or that he was not considered under arrest. "[T]he absence of police advisement that the suspect is not under formal arrest, or that the suspect is at liberty to decline to answer questions, has been identified as an important indicium of the existence of a custodial setting." *Griffin*, 922 F.2d at 1350. Regardless, Abdullahi appeared to understand the questioning was voluntary, as he declined to share his contact information with Detective Brown. Gov't Ex. 2 at 1:30–1:52, 6:02–6:15. (2) Judge Foster correctly determined that Abdullahi's freedom of movement was not restrained in any way during the interview, citing *United States v. Laurita*, 821 F.3d 1020, 1023–25 (8th Cir. 2016). In *Laurita*, FBI agents had a closed-door conversation with defendant at his workplace that "lasted no more than twenty minutes." *Id*. Laurita "never asked to move around in the room or leave during the course of the interview" and he "had a clear pathway to the door, and, although the door was closed, there [was] no evidence it was locked." *Id*. at 1024–25. "Considering the brief duration of the questioning and the absence of any evidence of restraint," the Eighth Circuit "ha[d] no difficulty concluding Laurita 'possessed unrestrained freedom of movement' during the interview." *Id*. at 1025 (quoting *Griffin*,

9

922 F.2d at 1349). Similarly, Abdullahi possessed unrestrained freedom of movement here. The body camera footage shows the officers did not touch Abdullahi (aside from a fist-bump at the beginning of the interview, and handshakes at the end), nor did the officers say or do anything to block Abdullahi's movement in any way. Gov't Ex. 2. During the interview, Detective Brown stood away from Abdullahi, and as can be seen in the window reflection on the bodycam footage, and Sergeant Soppeland also maintained a comfortable distance from Abdullahi. *Id*. The interview lasted seven minutes.[1] (3) Officers initiated contact with Abdullahi, but the record shows Abdullahi voluntarily complied. Abdullahi's voluntary compliance is demonstrated by Abdullahi's refusal to provide his contact information, followed by Detective Brown stating that Abdullahi was not obligated to share his phone number. Gov't Ex. 2 at 1:30–1:52, 6:02–6:15. And Abdullahi volunteered information about the restraining order and his parol status. *Id*. at 2:15–3:19. The body camera footage and officers' testimony reveal no suggestion of coercion. *See id*.; ECF No. 37. (4) There is no indication that any "strong arm" interrogation tactics were employed during the interview. (5) Judge Foster correctly found that the encounter was not police-dominated. The interview was conducted outside by plain-clothes officers, it was cordial and relaxed, and there is no evidence that the officers openly displayed their badges or

---

[1] Abdullahi argues the officers suggested they conduct the interview outside. ECF No. 53 at 4. Judge Foster found credible Sergeant Soppeland's testimony that Abdullahi asked "if we could step outside in front of the shop." ECF No. 37 at 23; *see* R&R at 12. There is no reason to second-guess this finding. Regardless, if the officers suggested conducting the interview outside, that fact would not convert the interview into a custodial interrogation because no evidence shows the officers restrained Abdullahi's movements or otherwise prevented him from leaving.

guns. *See* Gov't Ex. 2; ECF No. 37 at 30, 34–37. (6) Abdullahi was free to leave at the end of the interview.

Given the totality of the circumstances, and in consideration of the *Griffin* factors, a reasonable person in Abdullahi's situation would have felt free to terminate the encounter and walk away. Because Abdullahi was not in custody, a *Miranda* warning was not required, and Abdullahi's motion to suppress statements from the interview will be denied.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. The Objections to the Report and Recommendation [ECF No. 53] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 52] is **ACCEPTED** in full;

3. Abdullahi's Motion to Suppress Evidence from Arrest and Search [ECF No. 26] is **DENIED**; and

4. Abdullahi's Motion to Suppress Statements [ECF No. 27] is **DENIED**.

Dated: March 20, 2025                    s/ Eric C. Tostrud
                                         Eric C. Tostrud
                                         United States District Court